UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAPITAL FOR MERCHANTS, L.L.C.,

      Plaintiff,                   Case No. 2:16-cv-13610

v.                               Honorable Laurie J. Michelson
                                   Magistrate Judge David R. Grand

WEALTH CREATING INVESTMENTS,

      Defendant,

and

BCG EQUITIES, L.L.C.,

      Intervenor Plaintiff.

_____/

**REPORT AND RECOMMENDATION TO DENY INTERVENOR PLAINTIFF'S MOTION TO AMEND/CORRECT COMPLAINT IN INTERVENTION [46]**

Capital for Merchants, L.L.C. ("CFM"), the original plaintiff in this action, filed its complaint against Wealth Creating Investments ("WCI") on October 10, 2016, alleging breach of contract related to a July 15, 2016 Receivable Purchase Agreement (the "Purchase Agreement") pursuant to which WCI agreed to purchase CFM's rights to certain accounts receivable (the "Accounts").  (Doc. #1).  On January 3, 2017, WCI filed its answer to the complaint, along with a breach of contract counterclaim against CFM.  (Doc. #17).  Thereafter, however, WCI's counsel was permitted to withdraw from the case (Doc. #23), and WCI has not participated in the case since, failing even to respond to an Order to Show Cause as to why judgment should not be entered against it.  (Doc. #28).

On September 21, 2017, intervening plaintiff, BCG Equities, LLC ("BCG"), with permission of the Court, filed a complaint in intervention asserting a variety of claims against WCI

related to some of the Accounts that are the subject of CFM's claim against WCI.  (Doc. #32).

BCG has now filed a motion for leave to amend its intervenor complaint to include claims against

CFM related to the Accounts.  (Doc. #46).  An Order of Reference was entered on September 7,

2018, referring the motion to the undersigned for a hearing and determination pursuant to 28

U.S.C. § 636(b).  (Doc. #47).  CFM filed a response on December 14, 2018.  (Doc. # 48).  A

hearing on BCG's motion took place on January 14, 2019.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that BCG's motion to amend

its intervenor complaint **(Doc. #46)** be **DENIED**.

## II.     REPORT

### A.      Background

CFM is a merchant cash advance company.  (Doc. #1 at 2).  It advances money to

businesses in exchange for a percentage of the merchant's future receivables.  (*Id*.).  WCI is a

collections company that purchases debt from other companies and attempts to collect or resell it.

*Id*.  On July 15, 2016, CFM and WCI entered into the Purchase Agreement, wherein WCI

purchased over $15 million of CFM's accounts receivable – the Accounts – for $474,084.00.  (*Id*.

2–3; Doc. #1-1).  CFM received $150,000.00 from WCI, but alleges WCI has not paid the

remaining $324,084.00 due under the Purchase Agreement.  (*Id*. at 3).

On June 15 and 17, 2016, about a month *before* WCI acquired the rights to the Accounts

from CFM, WCI and BCG entered into an Account Receivables Purchase Agreement (the "A/R

Purchase Agreement").  (Doc. #46-3).  In this A/R Purchase Agreement, BCG agreed to purchase

from WCI some of the Accounts for $62,364.63, even though WCI had no rights in those Accounts

at the time.  (Doc. #32 at 3).  BCG claims that although it paid the $62,364.63 to WCI, WCI failed

to provide BCG with the documentation or media required to collect on the purchased Accounts. (*Id.*). Now, with WCI apparently nowhere to be found, BCG has filed the extant motion to amend its intervenor complaint to include claims against CFM for breach of contract and unjust enrichment, and for declaratory relief. (Doc. #46-1 at 11–13). The addition of these claims constitute the only proposed amendments to BCG's intervenor complaint; BCG's other claims against WCI have not changed. (Doc. #32 at 4–11; Doc. #46-1 at 4–11).

### B. Standard of Review

Federal Rule of Civil Procedure 15 governs amended complaints, providing, in relevant part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). As the Supreme Court has held:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Nonetheless, *Foman* "makes clear there are certain situations in which it is appropriate to deny leave to amend," including circumstances where amendment would be futile. *Harrison v. Burt*, 2008 WL 4058288 (E.D. Mich. Aug. 28, 2008). Amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and, thus, is subject to dismissal under Fed. R. Civ. P. 12(b)(6). *Id.* at *2.

### C. Analysis

#### 1. Breach of Contract

BCG first seeks to amend its intervenor complaint to assert that CFM breached duties it allegedly owed to BCG as a purported third party beneficiary of CFM's Purchase Agreement with

WCI. (Doc. #46-1 at 12). BCG bases this claim on the chronology of its and CFM's contracts with WCI. WCI and BCG executed the A/R Purchase Agreement on June 15 and 17, 2016, in which BCG agreed to purchase the Accounts from WCI. (*Id*. at 11). But the Purchase Agreement between WCI and CFM – which gave WCI the rights to the Accounts in the first place – became effective nearly one month later, on July 14, 2016. (*Id*.). BCG alleges that, because the A/R Purchase Agreement obligations depended on execution of the Purchase Agreement, it was the intended beneficiary of CFM and WCI's Purchase Agreement. (*Id*.). BCG alleges CFM breached its duties to BCG as the intended third party beneficiary by failing to provide BCG with documentation or media about the Accounts. (*Id*. at 12). Because of this alleged breach, BCG requests either the Accounts' documentation and media or a refund of the $62,364.63 that BCG paid to WCI under the A/R Purchase Agreement. (*Id*.).

The Michigan Supreme Court explained the standard for intended and incidental third party beneficiaries in *Schmalfeldt v. North Pointe Ins. Co*., 469 Mich. 422 (2003). "[O]nly intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor." *Id*. at 427. "[N]ot every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise." *Id*. A third party obtains the rights of an intended beneficiary only when the contract includes a promise directly from the promisor to the third party. *See id*. A third party cannot enforce a contract unless the contracting parties were "clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract." *Id*. at 428. Without "an express promise to act to the benefit of the third party . . . that third party cannot maintain an action for breach of the contract." *Kisiel v. Holz*, 272 Mich. App. 168, 171 (2006). Here, BCG argues the requisite awareness existed because the A/R Purchase Agreement

pre-dated the Purchase Agreement, and WCI's duties under the A/R Purchase Agreement depended on its later execution of the Purchase Agreement.  This argument lacks merit.

First, BCG has not alleged that CFM was aware of BCG's contract with WCI when CFM executed the Purchase Agreement with WCI.  Second, Michigan law clarifies that a third party beneficiary must be contemplated in the contract itself, which unquestionably did not occur in the Purchase Agreement between CFM and WCI.  Rather, the contract expressly forecloses any third party beneficiary claims, stating "[i]t is not the intent of the parties who are signatories to this [Purchase] Agreement to grant any rights whatsoever to parties who are not signatories to this Agreement and no provision of this Agreement should be construed to grant any rights to any party who is not a signatory herein."  (Doc. #46-2 at 7).  A "court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary," *Schmalfeldt*, 469 Mich. at 428, and this clause in the Purchase Agreement expresses its signatories' (CFM's and WCI's) clear intent not to create any third party beneficiary rights.

Because BCG does not satisfy the requirements of a third party beneficiary to the Purchase Agreement between CFM and WCI, BCG's proposed breach of contract claim against CFM based on the Purchase Agreement would be futile.

### 2.    Unjust Enrichment

BCG also alleges that its payment to WCI of $62,364.63 under the June 2016 A/R Purchase Agreement unjustly enriched CFM because CFM later received $150,000 from WCI under the July 2016 Purchase Agreement for the same Accounts.  (Doc. #46-1 at 12).  BCG asserts that under these circumstances, allowing CFM to keep the money it purportedly received from BCG (through WCI) would be inequitable.  (*Id*. at 13).  BCG's argument lacks merit.

A claim of unjust enrichment requires a plaintiff to plead: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993).  When a plaintiff can establish these elements, the law implies a contract to protect against unjust enrichment. *See id.* (citation omitted).  If an express contract already governs the same subject matter, the court will not imply a contract under the doctrine of unjust enrichment.  *See id.*; *Kahn v. Dean & Fulkerson, P.C.*, No. 99-1015, 2000 WL 1769582 at *5 (6th Cir. Nov. 13, 2000); *King v. Ford Motor Credit Co.*, 257 Mich. App. 303, 327-28 (2003) ("Because the parties' transactions were governed by written documentation, plaintiffs cannot rely on a claim of unjust enrichment . . .").

Here, BCG's claim of unjust enrichment follows from three events: BCG's payment to WCI for the Accounts, WCI's payment to CFM for the Accounts, and CFM's failure to produce the Accounts' documentation to BCG.  (Doc. #46-1 at 12).  The transfers of both money and information between BCG and WCI, and between CFM and WCI fall entirely under the A/R Purchase Agreement and Purchase Agreement, respectively.  The A/R Purchase Agreement outlines BCG's promise to pay WCI and WCI's promise to provide the Accounts' documentation.  (Doc. #46-3 at 4).  The Purchase Agreement outlines WCI's promise to pay CFM and CFM's promise to provide the Accounts' documentation.  (Doc. #46-2 at 2).  BCG has failed to allege any subject matter in its unjust enrichment claim not already governed by the operative contracts.  Thus, the court will not imply a contract under the doctrine of unjust enrichment.

Moreover, BCG has not alleged any cognizable "unjust enrichment" by CFG.  The Michigan Court of Appeals has clarified that for a third party to receive an unjust benefit from a contract between two other parties, the third party must have "requested the benefit or misled the

6

other parties." *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 24 (2012) (citation omitted). Accordingly, BCG must allege that CFM requested the benefit or misled the other parties—BCG and WCI. BCG has alleged no such facts. WCI's failure to perform its obligations under the A/R Purchase Agreement does not provide BCG the opportunity to seek restitution from CFM because, "in the absence of some misleading act by the third person, the mere failure of performance by one of the contracting parties does not give rise to a right of restitution against the third person." *Id.*

Additionally, BCG's allegations fail to show that CFM was enriched at all by BCG, let alone "unjustly." BCG does not allege that CFM held the $150,000.00 it received from WCI in trust for BCG. There is simply no factual link asserted between the money BCG paid to WCI and the money WCI paid to CFM. Indeed, because there is no dispute that CFM contracted to sell the Accounts to WCI for $474,084.00, but received only $150,000.00 of that price from WCI, requiring CFM to disgorge any of the $62,364.63 BCG paid to WCI would only serve to further increase CFM's own loss.

For all of these reasons, BCG's proposed unjust enrichment claim against CFM would be futile.

### 3. Declaratory Relief

BCG's final proposed amendment is to add a separate Count IX for declaratory relief against both CFM and WCI. (Doc. #46-1 at 13). Under this count, BCG merely incorporates by reference the other allegations of its proposed amended intervenor complaint and asks the Court to enter a declaratory judgment that BCG legally owns the Accounts, and that CFM either produce the Accounts' documentation and media or "return" to BCG the $62,362.63 BCG paid to WCI (plus interest, fees, and costs). (*Id.*). This proposed amendment to BCG's intervenor complaint is

futile.  It is well-settled that "[d]eclaratory relief is a remedy . . . not a claim."  *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012) (citation omitted).  Accordingly, Count IX, as proposed, is futile and should not be allowed.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that BCG's Motion to File First Amended Complaint in Intervention **(Doc. #46)** be **DENIED**.


Dated: March 13, 2019                          s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it

pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager